## Richmond.

### W. E. BOYD v. COMMONWEALTH.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Fulton & Hall* and *Earle A. Cadmus,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The petitioner is here complaining of his conviction under an indictment charging him with embezzlement and larceny of property of the Old Dominion Rubber Company, Inc., of which corporation he was, at the time of the offenses charged, president, sales manager and agent.

There are several interrelated assignments of error which are so confused in the argument that they must be separated in order to have a clear conception of their substance.

(a) There was a general demurrer to the indictment and to each count thereof, which was overruled, but the specific

grounds of demurrer were not stated, and we should, perhaps, be justified in saying no more about this assignment of error except that because of Rule XXII of this court it will not be considered here.

■ There are other obviously sufficient answers, however, to the objection. It is said, as to the fourth count of the indictment, that the venue was not properly laid. Had this objection been brought to the attention of the trial court, this alleged defect might have been cured, but the assignment is based upon a false assumption because venue is sufficiently laid in this, as well as in each of the other counts in the indictment. It is stated that the court in which the indictment was found was the Court of Hustings of the city of Portsmouth, and in the first and second counts it is stated that the acts complained of were done in the city of Portsmouth; whereas, in the third and fourth counts, the acts are charged as having been done in the said city. So certainly this ground of demurrer fails.

■ The second paragraph of Rule XXII clearly applies also: "Questions of venue in civil and criminal cases must be raised in the trial court before verdict in cases tried by a jury, or before judgment in all other cases. Venue, save in exceptional cases, cannot be raised thereafter, nor for the first time in this court."

■■ (b) It is said that neither in the indictment nor "in the verdict of the jury, which was general in its form"—that is, "guilty as charged in the indictment"—was the accused informed of the nature of the accusations or offenses for which he was to be tried.

Upon reading the indictment we find that the first count alleges that he was the president and agent of the Old Dominion Rubber Company, and charged him with having secured possession of a certain check for $350.04, the drawer of which was named, the date of the check being given, the name of the payee (W. E. Boyd, the accused) being stated, and the bank upon which it was drawn (Chase National Bank of the city of

New York), and that it had been given in payment for a bill of goods sold and delivered by the Old Dominion Rubber Company to customers who were named, and that he (the accused) had directed the check to be made payable to himself instead of to his company, as a means of defrauding his company; that he endorsed that check and feloniously embezzled and wrongfully converted the proceeds to his own use. The second count was equally specific as to goods shipped, for which he directed another check for $450.75 to be made payable to him instead of to his principal; and the third count was equally specific as to goods of his principal, amounting to $350.00 in value, wrongfully shipped with directions to the consignee to hold for his account. The fourth count charged him with manipulating the business of the Old Dominion Rubber Company in the name of the Portsmouth Rubber Company, charged to be a fictitious company, designed by him to be used as a cover for the larceny of goods from the Old Dominion Rubber Company, Inc., and that between May 23, 1928, and December 13, 1928, having received and taken into his possession certain rubber goods belonging to his company, upon various dates which were given, he stole such goods by shipping them to certain persons, the amount of the bill of each such person being stated, and that by this means he appropriated and converted to his own use property of the aggregate value of $723.84, and that the amount of money received therefor by him had not been accounted for.

This recital of the substance of these counts is to us a demonstration that the accused was in fact fully informed of the cause and nature of the offenses with which he was charged.

In *Pine* v. *Commonwealth*, 121 Va. 812, 93 S. E. 652, 653, this is said as to this constitutional right: "In all cases, civil as well as criminal, a person haled into court has the right to demand that he be told in plain, intelligible language what is the cause of the complaint against him, and this right, in so far as it relates to crimes, is guaranteed by both the Federal and State

Constitutions," United States amendment sixth, and State Constitution 1902, section 8.

Tested by this rule, the accused, by the indictment, was in fact clearly and sufficiently informed of the crimes with which he was thereby charged.

■ (c) It is also said that the indictment charged several different crimes—that is, larceny as distinguished from embezzlement—and in the fourth count with twenty-three separate larcenies, and this contention is made, although that count specifically charges that he had been guilty of the larceny of the aggregate sum represented by the twenty-three separate shipments.

It is certainly not necessary again to review the cases on this question. The subject was recently treated in the case of *Mitchell* v. *Commonwealth,* 141 Va. 546, 127 S. E. 368, 370, where this is said: "The authorities seem to agree that there is no objection in point of law to joining two or more distinct felonies in different counts of the same indictment. The objection, when it exists, arises out of confounding the accused or putting him to some disadvantage, or distracting the jury. From the standpoint of pleading, the joinder is unobjectionable, and consideration for the accused alone determines the discretion of the court.

"In Archbold's Crim. Pl. & Pr. (8th ed.) 295, it is said: 'Whenever the court, on seasonable application, deems that the due order of its proceedings or the interest of a party will be prejudiced by the multiplicity or ill joinder, it will, in its discretion, quash a count or the whole indictment, or order separate trials on the counts, or compel the prosecutor to elect on which one he will ask for a verdict, as the exigencies of the particular case and the time and manner of making the objection render most suitable.' "

In *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, 73, Ann. Cas. 1918-A, 1074, it is held, in substance, that in cases where the accused is shown to have been guilty of a series of peculations

and the indictment charges embezzlement of the entire amount, setting out with particularity the circumstances attending the transaction from its commencement to its consummation, it is not open to the objection that it charges more than one offense. 7 Ency. Pl. & Pr. 447.

It has long been settled that it is quite proper to join two counts for distinct felonies in the same indictment, and in indictments in which two separate felonies are charged in two separate counts of the same indictment, it is in the discretion of the court to allow all to be tried together. Beale's Crim. Pl. & Pr., sections 202, 204.

In this case the trial court was neither asked to quash the indictment for improper joinder of offenses nor to require the prosecuting attorney to elect. Under the care of the able attorney who defended him, the accused, without objection or protest, went to trial before the same jury upon all of the counts of the indictment. It is now too late to raise such an objection.

(d) Another assignment is that the court should have set aside the verdict of the jury as contrary to the law and the evidence and for lack of evidence to support it.

This assignment is argued before us as though the case must be determined solely by the testimony of the accused himself. There were some sharp conflicts in the testimony, but the testimony of the accused himself as to the offense charged in the first count of the indictment, and his admissions as to the transaction there charged, are alone sufficient to support the verdict of the jury under that count. He admitted every fact there charged, and the only defense which he offered was that he did not intend to defraud, but that his only motive was to collect certain indebtedness due him by the Old Dominion Rubber Company, Inc.

There are cases in which, where one has lawfully acquired possession of funds of another, he may escape conviction for embezzlement, though he refuses to pay them over

until his own debt is satisfied. We know of no instance like this where one in charge of the goods and business of a corporation of which he is president, but not in charge of its funds, and who wrongfully directs checks, which should have been paid to the corporation, to be made payable to himself, and then uses the money for his own purposes, can escape the imputation of embezzlement. This is not a case where one lawfully comes into possession of money or property of his debtor, who simply refuses to settle until his debtor settles with him. The accused here abused his trust, wrongfully acquired possession of the money of his principal, and used it for his own purposes.

As to the other three counts, the evidence introduced by the prosecution is sufficient, if credited by the jury, to support the verdict. Our statute, Code, section 4451, is applicable. That section defines embezzlement and is applicable to the facts of this case. It provides that in such cases the embezzler may be indicted as for simple larceny, but proof of embezzlement shall be sufficient to sustain that charge. That section requires, for the protection of the accused, that, if he demands it, he shall be entitled to a statement in writing from the attorney for the Commonwealth as to which statute he intends to rely upon for conviction. No such demand was made in this case.

The defense was chiefly based upon the claim that the accused was acting in good faith and was merely seeking to enforce the collection of his debts against the company. The validity of these debts is denied, while many of the condemning circumstances relied on by the prosecution to show fraud and dishonesty were not denied.

(e) Another assignment of error is based upon exceptions to the admission of testimony. The rule relied upon to support these exceptions is based upon the general rule that one on trial for a particular offense is to be convicted by evidence which shows that he is guilty of that particular offense, and that under ordinary circumstances proof of his guilt of

other offenses wholly unconnected with that for which he is put upon his trial must be excluded. Even under the general rule, it is quite doubtful whether there was any error in admitting the evidence, for one of the conditions of the general rule is that the other offense must be one wholly unconnected with that for which he was put upon trial. The testimony admitted in this case, upon which this assignment is based, is in substance, that during the period covered by the indictment the accused sold and delivered other goods of the corporation, received cash therefor, and failed to report it to the bookkeeper, and that he reported other goods sold and shipped out to several persons which were never either sold or shipped. The court admitted the testimony, but especially cautioned the jury that it was not to be considered by them as proving the crimes charged, but only the motive or intent of the accused in connection with the offenses which the indictment so clearly charged.

There are many exceptions to the general rule as to proof of other offenses; for example, it is frequently impossible to give a connected statement showing the crime charged without incidental reference to other contemporaneous and closely connected and similar crimes, and where there is only such incidental disclosure of other offenses, such testimony cannot be excluded.

In addition, it is also permissible, in cases where the motive, intent, or knowledge of the accused is involved, to admit evidence of acts, conduct, or declarations which tend to establish such knowledge, intention, or motive of the accused, notwithstanding the fact that this may disclose a different crime in law.

Such testimony is also admissible where the other crimes constitute only a part of the general scheme of which the crime charged is a part.

These exceptions are as well established as the rule itself.

The evidence under the fourth count shows, without

contradiction, that the son of the accused, who was also employed by the Old Dominion Rubber Company, organized another company called the Portsmouth Rubber Company, and that the accused sold and delivered to this other company a large quantity of goods belonging to his principal, the Old Dominion, of which there was either no report to the bookkeeper, or these transactions were so covered up by false invoices that it was impossible to trace the funds. The accused claimed that for these goods so delivered to the Portsmouth Rubber Company he received cash. This cash, however, did not appear upon the books of the company in any way by which it could be traced. He admitted that these transactions were not revealed either to the bookkeeper or to any one else. We have no doubt whatever that the ruling of the court in admitting such testimony was clearly within the exceptions to the rule.

We deem it unnecessary to review the authorities to support this ruling. They may be easily found; e. g., in *Trogdon* v. *Commonwealth*, 31 Gratt. (72 Va.) 862; *Seymour* v. *Commonwealth*, 133 Va. 786, 112 S. E. 806; *Rhodes* v. *Commonwealth*, 145 Va. 898, 134 S. E. 723; 8 R. C. L., pp. 198, *et seq.*, sections 194-198, inclusive; 3 R. C. L. Supp., pp. 2215, *et seq.*; *People* v. *Mutchler*, 309 Ill. 207, 140 N. E. 820, 35 A. L. R. 344.

(f) Another assignment is based upon the instructions. We think it only necessary to read them to show that they were not erroneous.

The Commonwealth only asked for two instructions. The first reads: "The court instructs the jury that if the defendant received from A. V. Berner & Company a check for $350.04 as proceeds from sale of goods of the Old Dominion Rubber Company, it was his duty to hold or apply it for the said company, and if he appropriated it to his own use with intent to defraud, he is guilty under the first count of this indictment."

No instruction was asked for based upon the testimony tending to prove his guilt under the other three counts, which, we suppose, indicates that the prosecutor preferred to rely upon that portion of the evidence about which there was no substantial conflict.

The only other instruction asked for by the Commonwealth was as to reasonable doubt, the substance of which was that the jury were not to go beyond the evidence for the purpose of hunting up doubts, and if, after considering all of the testimony, they had an abiding conviction of the truth of the charge, then they could say they were satisfied beyond a reasonable doubt.

The accused only asked for two instructions, both of which were given.

Instruction "A" reads: "The court instructs the jury that unless they believe from the evidence, beyond every reasonable doubt, that the defendant fraudulently with criminal intent stole the property or money, as alleged in the indictment, it is the duty of the jury to find him not guilty."

It may well be questioned whether, under the uncontradicted testimony of the case, the accused was entitled to such a favorable instruction; certainly, it gave him the full benefit of the only defense he interposed, namely, that he had no criminal motive.

Defendant's instruction "B" was on the presumption of innocence, in which the jury were told that this presumption went with the defendant throughout the whole case and applied at every stage thereof, and unless the jury had an abiding conviction to a moral certainty of his guilt, they should find him not guilty.

As we have indicated, these instructions are so obviously without error that nothing further need be said about them.

Our conclusion, then, is to affirm the judgment.

*Affirmed.*